UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH E. HAYAS,

                Plaintiff,

 v.                              Case No. 8:13-cv-1432-T-33AEP

GEICO GENERAL INSURANCE
COMPANY,

                Defendant.

_____/

**ORDER**

     This cause is before the Court pursuant to Defendant
GEICO General Insurance Company's Motion for Summary
Judgment, which was filed on July 28, 2014 (Doc. # 68), and
Plaintiff Kenneth E. Hayas' Motion for Partial Summary
Judgment, which was filed on July 31, 2014. (Doc. # 72). Hayas
filed his response in opposition to GEICO's Motion on
September 2, 2014. (Doc. # 81). Thereafter, GEICO filed its
response in opposition to Hayas' Motion on September 5, 2014.
(Doc. # 83). Both parties filed replies to the respective
motions.

     Due to ongoing discovery issues and a ruling by the
Magistrate Judge that an additional limited deposition could
take place, this Court entered an Order on October 14, 2014,
directing the deposition to take place no later than November

3, 2014. (Doc. # 104). This Court further stated that "to the extent the parties wish to use the information gathered from [the] deposition, the parties have until November 10, 2014, to file a supplemental memorandum limited to the ninety minute deposition of Ms. Ryan with the Court." (Id.). The Court concluded all other discovery issues on October 22, 2014. (Doc. # 106). On November 10, 2014, GEICO filed its Memorandum in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment. (Doc. # 108). After review of the record, the Court grants GEICO's Motion in its entirety and denies Hayas' Motion.

I.   **Background**

Hayas was the owner of a 1999 Ford automobile that was insured by GEICO. (Doc. # 5 at ¶¶ 5-6). On September 28, 2009, while the insurance policy was in full effect, Hayas negligently operated the automobile resulting in an accident with William Ryan. (Id. at ¶¶ 6, 8). As a consequence, Ryan sustained serious injuries and died due to those injuries. (Id. at ¶ 6). At the time of the accident, Hayas' GEICO insurance policy provided bodily injury limits of $100,000.00 per person and $300,000.00 per occurrence. (Id. at ¶ 7).

Ryan's Estate made a claim against Hayas, and GEICO undertook to defend Hayas. (Id. at ¶¶ 9-10). Hayas alleges that a settlement opportunity arose, but GEICO failed to settle the claim. (Id. at ¶ 11). Instead, Ryan's Estate obtained a jury verdict against Hayas, and a final judgment was entered against Hayas in Polk County, Florida, in the total amount of $1,610,210.41. (Id. at ¶ 15).

According to GEICO, the accident was reported to GEICO on September 29, 2009, by Leslie Bellao, and assigned to GEICO claims examiner James Boley. (Doc. # 68 at 3). Thereafter, GEICO learned that Ryan's Estate had retained an attorney, Richard E. Straughn. (Id.). GEICO spoke to Hayas on October 7, 2009, and "learned that he did not recall the accident and had been prescribed medication approximately six months earlier due to dizzy spells." (Id.). "In correspondence dated October 8, 2009, GEICO advised Bellao, with a copy to Hayas, of the possibility of exposure in excess of policy limits." (Id.). Due to the fact that Hayas could not remember the accident, GEICO continued to attempt to acquire the police report in order to assess liability. (Id.). GEICO obtained the police report on October 16, 2009, which confirmed the details of the accident and that Hayas was liable. (Id. at 4).

"That same day, which was only seventeen (17) days after the accident, GEICO made the decision to tender the policy limits." (Id.). GEICO's field representative, Tracy Mills, was assigned the task of delivering a check in the amount of policy limits and a proposed release to [Attorney Straughn's] office." (Id.). GEICO visited and attempted to call Attorney Straughn's office without success. (Id.). Ultimately, Mills was able to speak with Attorney Straughn and advised him that GEICO wished to tender the policy limits and obtain a letter of representation. (Id.). That afternoon, Mills received a faxed demand letter from Attorney Straughn stating in relevant part:

> To the extent that all terms of this letter are complied with, my clients will sign a release releasing only your insured(s) in consideration of your payment of all applicable policy limits. My clients will sign a general release and will satisfy all valid liens out of the proceeds of the settlement. However, my clients cannot and will not sign a release containing a hold harmless nor an indemnity agreement. Nor will my clients accept a release that purports to state your insured(s) are denying liability or requesting confidentiality. . . . Therefore, any attempt to provide us with a release from this point forward which contains a hold harmless or indemnity agreement or purports to release anyone or entity other than your insured(s), or denies liability or requests confidentiality will act as a rejection of this good faith offer.

(Id. at 5).

4

The day after receiving the demand letter, GEICO tendered the check for policy limits, along with a proposed release to Attorney Straughn's office. (Id.). On October 27, 2009, Attorney Straughn faxed correspondence to Mills at GEICO stating that the demand had not been strictly complied with and GEICO had instead made a counteroffer. (Id. at 6). "As support for his position that GEICO had counter-offered, Straughn implied that GEICO's release did not comply with his clients' requirements." (Id.).

GEICO responded to Attorney Straughn's letter by stating that GEICO was "trying to make every effort to resolve" the claim. (Id. at 7). GEICO also enclosed a release that did not contain hold harmless or indemnity language, and advised that another check in the amount of policy limits would arrive under separate cover. (Id.). In a letter from GEICO to Attorney Straughn on November 4, 2009, GEICO stated the following:

> Not all release forms precisely fit the facts and circumstances of every claim. Should you have any questions about any aspect of the release terms, please call me immediately. You may also send me any suggested changes, additions or deletions with a short explanation of the basis for any changes you suggest; or if you have a release that you desire to use, please forward it to me. . . . If you feel that there is any aspect of the enclosed document, which does not reflect our settlement of your claim(s), please contact me immediately so

5

that we can see that the document is revised to reflect the exact terms of our agreement.

(Id. at 7-8).

Vickie Ryan, as Personal Representative of the Estate of William Ryan, filed suit, with assistance of Attorney Lance Holden, against Hayas in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida on November 4, 2009. (Id. at 8). Thereafter, Attorney Holden sent correspondence to GEICO on November 10, 2009. (Id.). In the correspondence, Attorney Holden acknowledged Straughn's receipt of the reissued policy-limits check and enclosed the check, which had been marked "VOID," and a copy of the state court complaint against Hayas in his letter to GEICO. (Id.). Attorney Holden sent GEICO another letter and "concluded his November 16, [2009] letter by clearly and unequivocally stating that his clients would not settle for the policy limits." (Id. at 9). The suit filed by Ryan's Estate against Hayas ultimately resulted in a judgment against Hayas for the total amount of $1,610,210.41 on October 20, 2011. (Id.).

Hayas in turn filed the present action against GEICO for "bad faith" on May 31, 2013, and filed an Amended Complaint on June 10, 2013. (Doc. ## 1, 5). Among other allegations, Hayas alleges that GEICO breached its "duties of good faith

in the handling of the claims made against [Hayas] by acting in bad faith." (Doc. # 5 at ¶ 19).

GEICO filed the present Motion for Summary Judgment on July 28, 2014. (Doc. # 68). Hayas filed his Motion for Partial Summary Judgment on July 31, 2014. (Doc. # 72). As both parties have filed responses and replies to the respective Motions, the Motions for Summary Judgment are ripe for the Court's review.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing

7

law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron &

Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## II.  **Analysis**

Florida law authorizes an insured party to sue its insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(b)(1). "An insurer . . . has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980). "The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Id.

In determining whether an insurer has acted in bad faith in handling a claim, courts apply the totality of the circumstances standard.

> Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause. Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations.
>
> Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show not only that there was no realistic possibility of settlement within policy limits, but also that the insured was without the ability to contribute to whatever settlement figure that the parties could have reached.
>
> * * *
>
> Finally, the ultimate tender of the policy limits does not automatically insulate an insurer from liability for bad faith.

Powell v. Prudential Prop. & Cas. Ins. Co., 584 So. 2d 12, 14–15 (Fla. 3d DCA 1991) (internal citations omitted); see also Berges, 896 So. 2d at 680 (citation omitted). While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, courts have in certain circumstances been able to conclude, as a matter of law, that the insurance company did not act in bad faith. See Berges, 896 So. 2d at 680.

10

A.   __Hayas' Motion for Partial Summary Judgment__

Hayas moves for entry of partial summary judgment stating "that he is entitled to judgment as a matter of law with regard to the determination that the Defendant's initial response to the original time limited settlement offer presented to resolve all claims against him was by law a rejection of and counter-offer to said settlement offer." (See Doc. # 72). The October 21, 2009, demand would have resolved all claims against Hayas as long as certain conditions were met by GEICO, which incorporated the inclusion of affidavits of no other coverage and the provision of a release without certain objectionable language. (Id. at 4). According to Hayas, "GEICO could have and should have obtained a release of all claims against [] Hayas from [Ryan's Estate], since such a release was possible and within the policy limits, but chose not to do so, contrary to and in total disregard of [] Hayas' best interests." (Id. at 5-6). Hayas maintains that "[t]he record and facts are clear that GEICO provided a release to [Ryan's Estate] that contained material settlement terms specifically prohibited by the offer to settle." (Id. at 6-7).

GEICO maintains that Hayas "has not moved for judgment on all or any part of the claim, but has merely asked the

Court to render an opinion regarding issues of law which would not limit the proof in this case or dispose of any disputed issue." (Id.). GEICO states that it had one "singular duty" to Hayas with regard to the handling of the underlying claim, which is at issue in this case: the duty of good faith. (Id. at 3).

The October 21, 2009, "demand letter" from Attorney Straughn to Mills, at GEICO, states in relevant part:

> As you can imagine, my clients are very concerned that there are not sufficient assets to cover this profound loss. Consequently, my clients have asked me to investigate and to determine whether there are assets available and to what extent they are available in order for them to decide whether they can resolve this matter amicably with your insured(s). In order to do my job, I must request strict compliance with the following. Please provide me with all of the information required by F.S. § 627.4137 (a copy of which is attached for your insured(s)). In addition, I need affidavits from your insured(s) and his/their insurance agent that there is no coverage other than the GEICO coverage which is purported to be $100,000.00. To the extent that all terms of this letter are complied with, my clients will sign a release releasing only your insured(s) in consideration of your payment of all applicable policy limits. My clients will sign a general release and will satisfy all valid liens out of the proceeds of the settlement. However, my clients cannot and will not sign a release containing a hold harmless nor an indemnity agreement. Nor will my clients accept a release that purports to state your insured(s) are denying liability or requesting confidentiality. Further, my clients are only releasing your insured(s) and no other person or entity as the only claim they have is against your insured(s).

> Therefore, any attempt to provide us with a release
> from this point forward which contains a hold
> harmless or indemnity agreement or purports to
> release anyone or any entity other than your
> insured(s), or denies liability or requests
> confidentiality will act as a rejection of this
> good faith offer. This offer is open to your
> insured(s) for three (3) weeks from the date of
> this letter. . . .

(Doc. # 83-1). GEICO argues that the "demand letter" was not an offer or contract that could simply be accepted as no release was provided and the terms and conditions of the offer remained undefined. (Doc. # 83 at 7).

Furthermore, GEICO asserts that it complied with and provided all of the materials requested to settle the claim. (Id. at 11). GEICO's agent, James Boley, sent correspondence to Attorney Straughn on November 4, 2009, stating that "Not all release forms fit the facts and circumstances of every claim." (Id. at 12). Boley further requested Attorney Straughn to immediately call if he had any questions regarding the release terms and invited suggested changes, additions or deletions with the basis of such. (Id.). Ryan's Estate did not contact GEICO about changes nor did Ryan's Estate provide a release it found to be suitable. (Id.). Rather, "[I]nstead of working with [GEICO] to effectuate the settlement, Straughn chose to send a crafted demand letter in which to create a circumstance in which GEICO's proactive tender and

13

proposed release could be construed as a 'counter-offer.'" (Id. at 15).

Hayas counters that despite GEICO's attempts to argue its own Motion for Summary Judgment here, "the bottom line is that GEICO rejected the offer by tendering a non-conforming release on October 22, 2009." (Doc. # 90 at 2). Hayas contends that "the October 21, 2009 [letter] specifically advised GEICO that proposing a release containing a hold harmless or indemnification provision would be deemed a rejection of the offer; and GEICO specifically did just that the next day." (Id.).

The Court notes that Hayas' Motion seeks a determination from this Court that GEICO's initial response to the original time limited settlement offer was a rejection of and counter-offer to Hayas. (Doc. # 72). While this Court recognizes Hayas' arguments to be based in simple contract law, the issue for determination here is whether GEICO acted in accordance with its duty of good faith under the Florida standard of the totality of the circumstances, not merely issues of contract. See Berges, 896 So.2d at 680.

The crux of a bad faith claim is whether under all the circumstances, the insurer failed to settle a claim when it had a reasonable opportunity to do so. See Contreras v. United

14

States Sec. Ins. Co., 927 So. 2d 16, 20 (Fla. 4th DCA 2006).
Hayas has failed to present evidence entitling him to judgment
as a matter of law because this is a bad faith action and not
just a contract dispute as Hayas contends in his motion. For
the reasons stated above, Hayas' Motion for Partial Summary
Judgment is denied.

## B. **GEICO's Motion for Summary Judgment**

GEICO moves for summary judgment and asserts that
"because GEICO was, at all times, trying to settle the claim
within the applicable policy limits it is entitled to judgment
as a matter of law." (Doc. # 68). "The undisputed material
facts establish that GEICO did not, at any point, put its own
interests above those of its insured." (Id. at 2). Therefore,
GEICO contends that "no reasonable jury could conclude that
GEICO handled Plaintiff's claims in bad faith." (Doc. # 88).

GEICO's conduct that Hayas avers constitutes bad faith
is the following: (1) GEICO could have accepted the terms of
Ryan's counsel's October 21, 2009, demand letter, (2) GEICO
initially included "hold harmless and indemnity" language in
its proposed release, and (3) GEICO failed to enter into a
Cunningham agreement. (Id. at 2).

As an initial matter, the Court addresses Hayas'
contention that GEICO's failure to enter into a Cunningham

agreement constitutes bad faith. In Cunningham v. Standard
Guaranty Insurance Co., 630 So. 2d 179, 181 (Fla. 1994), "the
Florida Supreme Court stated that under ordinary
circumstances, a third party must obtain a judgment against
the insured in excess of the policy limits before prosecuting
a bad-faith claim against the insured's liability carrier."
Perrien v. Nationwide Mut. Fire Ins. Co., No. 8:08-CV-2586-
T-30TGW, 2010 WL 2921621, at *4 (M.D. Fla. July 23, 2010);
see Blanchard v. State Farm Mut. Auto. Ins., 575 So. 2d 1289
(Fla.1991)(announcing analogous rule to that of a first-party
bad-faith claim). However, "[i]n Cunningham, the court held
that a trial court would have jurisdiction to decide the issue
of bad-faith handling of an insurance claim prior to the
determination of liability and damages in the underlying tort
claim where the parties so stipulated." Id. In that case, the
parties had stipulated "to try the bad faith action before
trying the underlying negligence claim . . . and that if no
bad faith was found, the . . . claims would be settled for
the policy limit, and [the plaintiff] would not be exposed to
an excess judgment." Id.

This Court finds GEICO's failure to enter into a
Cunningham agreement that would have protected Hayas does not
constitute bad faith. See Berges, 896 So. 2d at 671 n. 1

16

(concluding that the insurance company's failure to accept a Cunningham agreement did not constitute bad faith). Hayas cites no authority for his proposition that GEICO's failure to enter into a Cunningham agreement can be considered when evaluating the totality of the circumstances for determining whether GEICO acted in bad faith. Furthermore, as explained more fully below, after considering the totality of the circumstances, the Court finds that no reasonable jury could conclude that GEICO acted in bad faith. Moore v. Geico Gen. Ins. Co., No. 8:13-CV-1569-T-24AEP, 2014 WL 2938430, at *11 (M.D. Fla. June 30, 2014).

GEICO asserts that "the duty of good faith [] obligates an insurer to initiate settlement negotiations 'where liability is clear, and [the] injuries so serious that a judgment in excess of the policy limits is likely. . . .'" (Doc. # 68 at 11)(quoting Powell, 584 So. 2d at 14. "However, this obligation does not strip an insurer of its duty and right to fully investigate claims." Id.; see Johnson v. GEICO Gen. Ins. Co., 318 F. App'x 827 (11th Cir. 2009)("An insurer acting with diligence and due regard for its insured is allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer (or to tender

policy limits in advance of a settlement offer) without time for investigation.").

Furthermore, bad faith is more than mere negligence. See Campbell v. Gov't Emps. Ins. Co., 306 So. 2d 525, 530-31 (Fla. 1974). "Unlike ordinary negligence, 'the essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment.'" (Id.)(quoting Novoa v. Geico Indem. Co., No. 12-80223-CV, 2013 WL 172913, at *4 (S.D. Fla. Jan. 16, 2013)). GEICO reiterates that Florida law applies a totality of the circumstances test when evaluating bad faith claims. (Id.). Namely, GEICO argues that "there is no comprehensive list of factors that courts must weigh when determining whether an insurer acted in bad faith . . . it is well established that the claimant's unwillingness to settle the claim is relevant to whether the insurer acted in bad faith under the totality of the circumstances." (Id. at 13); see Barry v. Geico Gen. Ins. Co., 938 So. 2d 613 (Fla. 4th DCA 2006)(stating that the conduct of the underlying claimant's attorney is relevant to an insurer's defense that there was no realistic opportunity to settle, and that introduction of such evidence was appropriate).

18

GEICO argues that "a necessary component to settling the claim was that the Estate and its attorneys were willing to settle within the available policy limits. The undisputed material facts demonstrate that they simply were not willing to do so and, instead, were more interested in pursuing the full value of the claim, culminating in the present bad faith action." (Doc. # 68 at 17). GEICO maintains that Ryan's Estate's choice not to settle does not convert the $100,000.00 into unlimited coverage. (Id.).

In addition, GEICO contends that it was at all times trying to settle the claim brought by Ryan's Estate against Hayas. (Id. at 18). "Without having received any demand from the Estate's counsel, GEICO proactively attempted to tender the policy limits on October 21, 2009, just twenty three days after it was notified of the loss, and only five days after GEICO received the police report, which confirmed that Hayas was liable for the accident." (Id.).

Hayas identifies two specific instances where he contends GEICO breached its duty of good faith. First, Hayas contends that on October 21, 2009, Attorney Straughn presented a letter to settle all claims against Hayas. (Doc. # 81 at 15). On October 22, 2009, GEICO delivered a check and release which contained a hold harmless and indemnity

19

agreement thereby rejecting the offer. (Id.). According to Hayas, "GEICO cites to all kinds of actions it took thereafter, but those actions could not revive the opportunity that was lost when GEICO did exactly what the claimant's counsel specifically required it not to do." (Id.). Second, GEICO was presented an opportunity to settle by way of a letter dated July 6, 2010, from Mr. Swope, Hayas' personal counsel, proposing a Cunningham agreement. (Id. at 16). Hayas states that "GEICO's outright refusal to protect [] Hayas by agreeing to [the terms] was not only bad faith, but most clearly evidences how GEICO put its own interests ahead of the interests of its insured." (Id. at 17).

In its reply, GEICO states that "it is undisputed that within the three week time period, GEICO complied with and satisfied the terms [of the demand letter]. Specifically, GEICO tendered the $100,000.00 policy limits, provided proposed releases, delivered a certified copy of the policy, and provided affidavits from the insureds." (Doc. # 88 at 2). However, GEICO maintains that Ryan's Estate was unwilling to settle the claims against Hayas and therefore GEICO had no reasonable opportunity to do so. (Doc. # 68). The record evidence and undisputed material facts demonstrate that GEICO made every attempt to settle the claim for policy limits and

no reasonable jury could conclude that GEICO acted solely in its own interest in attempting to settle the claim.

The undisputed evidence shows that GEICO tendered the policy limits and provided proposed releases quickly in an effort to promptly settle the claim against Hayas in good faith. The accident was reported to GEICO on September 29, 2009, by Bellao. (Doc. # 68 at 3). On October 8, 2009, GEICO advised Bellao and Hayas of the possibility of exposure in excess of policy limits. (Id.). Thereafter, on October 16, 2009, GEICO received the police report and made the decision to tender the policy limits. (Id. at 4). Five days later, on October 21, 2009, GEICO attempted to deliver the policy limits check and proposed release to Attorney Straughn, but was unable to do so because Attorney was Straughn was "out." (Id.).

GEICO then spoke to Attorney Straughn and advised that GEICO wished to tender the policy limits and obtain a letter of representation. (Id.). Attorney Straughn responded that he was not in the office but would be in contact soon. (Id.). That very afternoon, GEICO received the demand letter from Attorney Straughn. (Id.). The next day, October 22, 2009, GEICO delivered the check representing the policy limits and a proposed release document to Attorney Straughn. (See Doc.

21

# 68-9). Shortly thereafter, on October 27, 2009, Attorney Straughn sent a letter to GEICO stating that his client's offer was clear, unequivocal, non-negotiable and required strict compliance. (Doc. # 68-12). The letter specifically states that Attorney Straughn relayed GEICO's "counteroffer" to his clients and they respectfully reject it and are no longer interested in negotiating with GEICO. (Id.). "Once GEICO was notified that the proposed release contained objectionable language, it immediately acted to remove same and provide [Ryan's Estate] with another proposed release." (Doc. # 88 at 3).

GEICO responded to Attorney Straughn's letter by stating:

> The proposed release that Ms. Mills left with your office was not intended to serve as a counter offer to your demand. In fact, we were trying to make every effort to resolve your client's demand even before we received any correspondence from you. In my fax to you dated October 22, 2009, I attached our affidavit of coverage and advised you that a copy of our policy would be following shortly. Enclosed you will find a copy of our policy along with our insured's affidavits as you requested. In addition, I have enclosed a release which does not contain any hold harmless or indemnity language. I have issued another check in the amount of $100,000.00 to your office under separate cover.

(Doc. # 68-13). In addition, the cover letter enclosing the above mentioned proposed release from GEICO to Attorney Straughn stated:

> Not all release forms precisely fit the facts and circumstances of every claim. Should you have any questions about any aspect of the release terms, please call me immediately. You may also send me any suggested changes, additions or deletions with a short explanation of the basis for any changes you suggest; or if you have a release that you desire to use, please forward it to me.

> * * *

> If you feel that there is any aspect of the enclosed documents which does not reflect our settlement of your claim(s), please contact me immediately so that we can see that the document is revised to reflect the exact terms of our agreement.

(Doc. # 68-15). It is apparent that had Ryan's Estate wanted to settle the claims against Hayas for policy limits, Attorney Straughn could have contacted GEICO to address any alleged the deficiencies in an effort to amicably resolve the problems. Instead of communicating with GEICO, Attorney Straughn rejected GEICO's settlement attempt and Attorney Lance Holden filed suit. (Doc. # 68 at 8).

GEICO has continually asserted that it did not have a meaningful opportunity to settle the claims against Hayas because Ryan's Estate did not want to settle. (See Doc. ##

68, 88). To that end, the personal representative of Ryan's

Estate testified to the following:

Q: Were you upset when you heard someone say that
Geico said your husband had drugs in his system at
the time of the accident?

A: Yes, that was an insult.

A: That was an insult to my husband and to my family
and it still bothers me today.

Q: It's my understand – did anyone at Geico ever
specifically tell you that your husband had drugs
in his system?

A: No.

Q: And who told you about the statement that your
husband had drugs in his system?

A: I heard Richard Straughn mention it.

                              * * *

Q: And what did Mr. Straughn tell you in regard to
the alleged drug use?

A: That Geico had told State Farm that there had
been drugs in Bill's system.

Q: And what was your reaction to being told that
your husband had drugs in his system at the time of
the crash?

A: I was mad.

Q: Did that affect your willingness to settle your
claim against Mr. Hayas for the $100,000.00 policy
limits?

A: I did not want to settle with Geico then, after
that.

* * *

Q: And as of October 27[], 2009, were you willing to settle the claim with Mr. Hayas for the $100,000[.00] policy limits?

A: No.

Q: And prior to the October 27[], 2009 letter being sent out, what conversations did you have with your attorneys about rejecting the $100,000[.00] policy limit tender?

A: That I would not accept it, would not settle.

Q: Were you aware that Geico sent several letters to your attorneys dated November 4[], 2009 enclosing certain documents?

A: Yes, but I made up my mind that I was not going to settle.

* * *

Q: So at that point even if Geico provided every single thing to you that was requested in the demand letter, you had already determined that you weren't going to settle it for the policy limits ask – after that October 27[th] date?

A: Yes, that's correct.

Q: And it's my understanding that the main reason you were unwilling to settle was based upon the allegations of drug use?

A: That's right.

(Doc. # 108-1 at 24-26, 54-55).

While Hayas seeks to isolate GEICO's conduct into two distinct failures to settle the claim, it is the totality of the circumstances and GEICO's conduct as a whole that this

25

Court must consider. It is clear from Ryan's Estate's testimony that settlement was not an option after October 27, 2009. GEICO maintained a willingness to settle the claims against Hayas after the initial demand; however, Ryan's Estate did not. As stated in Moore, "[t]his is a tragic case for the underlying claimants. The underlying tortfeasor[] [is] to blame for the inadequate insurance, not GEICO, and the Court refuses to turn GEICO's limited insurance policy into an available deep pocket to pay the bodily injury claims." Moore, 2014 WL 2938430, at *14.

This Court finds that GEICO responded quickly and appropriately in investigating the claim against Hayas, kept Hayas informed, and did everything within its control to settle the claim. Therefore, the Court concludes that no reasonable jury could conclude that GEICO acted in bad faith. Thus, GEICO's Motion for Summary Judgment is granted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   GEICO General Insurance Company's Motion for Summary Judgment (Doc. # 68) is **GRANTED**.

(2)   Kenneth Hayas' Motion for Partial Summary Judgment (Doc. # 72) is **DENIED**.

(3)  The Clerk is directed to enter judgment in favor of
     GEICO General Insurance Company and against Kenneth
     E. Hayas.

(4)  After judgment is entered, the Clerk is thereafter
     directed to close the case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this
5th day of December, 2014.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record